IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL OGIDI-GBEGBAJE,

    Plaintiff,

    v.

WERNER ENTERPRISE,

    Defendants.

CIVIL ACTION FILE NO.
1:13-CV-02033-WSD-JFK

## FINAL REPORT AND RECOMMENDATION

Plaintiff Michael Ogidi-Gbegbaje filed the above-styled employment discrimination action against Defendant Werner Enterprise ("Werner") on June 18, 2013. [Doc. 1]. In his complaint, Plaintiff asserted a claim of discrimination based on race pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.* [Id.]. Defendant Werner has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's claim based upon the pleadings, statements of material facts, exhibits, and discovery materials submitted to the court. [Doc. 50].

I.    **Facts**

When evaluating the merits of a motion for summary judgment, the court must "view the evidence and all factual inferences raised by it in the light most favorable

to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party." Comer v. City of Palm Bay, Florida, 265 F.3d 1186, 1192 (11th Cir. 2001). However, mere conclusions and unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).

The court's local rules: (1) require the movant for summary judgment to provide a "separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried"; (2) require the respondent to provide responses to each of the movant's numbered undisputed material facts; and (3) state that the movant's facts will be deemed admitted absent proper refutation. LR 56.1 B.(1), (2), N.D. Ga. Specifically, the local rules require, along with a responsive brief, a response to the movant's statement of undisputed facts –

> (1) This response shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts.

> (2) This Court will deem each of the movant's facts as admitted unless the respondent: (I) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the

> movant's fact is not material or otherwise has failed to comply
> with the provisions set out in LR 56.1 B.(1).

LR 56.1 B.(2)a., N.D. Ga. Compliance with Local Rule 56.1 is the "only permissible way . . . to establish a genuine issue of material fact" in response to the moving party's assertion of undisputed facts. Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008). "The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement." Id. The Court must then review the movant's statement of undisputed facts and ensure – by, "[a]t the least, . . . review[ing] all of the evidentiary materials submitted in support of the motion for summary judgment" – that the movant's statement of facts is in fact supported. Id. at 1269 (quoting United States v. One Piece of Real Property, 363 F.3d 1099, 1101-02 (11th Cir. 2004)) (internal quotation marks omitted).

In the present case, Defendant filed a statement of undisputed material facts in support of the summary judgment motion. [Doc. 50-2]. Plaintiff filed a response [Doc. 55] to the motion for summary judgment, but he did not file a separate response to Defendant's statement of undisputed facts as required by LR 56.1 B.(2)a., N.D. Ga.

3

Plaintiff's response brief "did not 'contain individually numbered, concise, non-argumentative responses corresponding to each of the movant's enumerated material facts.'" <u>Williams v. Slack</u>, 438 Fed. Appx. 848, 850 (11th Cir. 2011) (quoting <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1302 (11th Cir. 2009)).[1] Therefore, Defendant's proffered material facts are deemed admitted to the extent that they are supported by the record, and the following facts are considered true for the limited purpose of evaluating Defendant's summary judgment motion. <u>See</u> <u>Reese</u>, 527 F.3d at 1269.

Plaintiff began working as a commercial driver for Defendant Werner on March 30, 2012. [Defendant's Statement of Material Facts as to Which There is No Genuine Issue to be Tried ("SMF") ¶ 1]. Pursuant to the Federal Motor Carrier Safety Act ("FMCSA"), Plaintiff was required to pass a medical examination to determine his

---

[1]Plaintiff's response brief basically sets forth his disagreement with the substance of the statements contained in the Affidavit of June Marella-Luce, DC, submitted in support of the motion for summary judgment. [Doc. 55]. Most of the exhibits attached to Plaintiff's brief are not properly authenticated. The facts asserted by Plaintiff in the response brief likewise are not contained in a separate statement of disputed material facts as required by LR 56.1 B.(2)b. <u>See</u> <u>Dalrymple v. Protective Life Ins. Co.</u>, 2007 WL 294248, at *1 n.3 (N.D. Ga. January 26, 2007) ("to establish additional undisputed material facts, a non-movant must file a separate statement conforming to LR 56.1B(1)"). Accordingly, any arguments relying on facts not supported by the record will not be considered by the court in resolving the motion for summary judgment.

AO 72A
(Rev.8/82)

fitness as a commercial driver. [Defendant's SMF ¶ 2]. On behalf of Defendant, Dr. June Marella-Luce performed a medical examination on Plaintiff on March 30, 2012, to determine if he was medically qualified to work as a commercial truck driver.[2] [Defendant's SMF ¶ 3]. During this examination, Dr. Marella-Luce noted a possible cardiac rhythm irregularity. [Defendant's SMF ¶ 4]. She certified Plaintiff to drive for a period of three months but required ongoing evaluation due to possible cardiac irregularities and required Plaintiff to follow-up with a primary care physician prior to June 30, 2012, in order to have his cardiac rhythm irregularity more fully evaluated. [Defendant's SMF ¶ 5]. During this meeting with Dr. Marella-Luce, Plaintiff testified that the doctor stated that "she's white" and that "she told [him] that, oh, she had the

---

[2]One of Plaintiff's factually unsupported attacks on Dr. Marella-Luce's affidavit is his contention that she "is not a qualified, licensed chiropractor in Georgia." [Doc. 55 at 1-2, Exhibit 3]. The exhibit, allegedly a copy of a web-search response, is not sufficient to undermine Dr. Marella-Luce's sworn statement that she is licensed to practice medicine in the State of Georgia. [Doc. 50, Marella-Luce Affidavit ("Aff.") ¶ 2]. And, even if the exhibit is considered, Defendant provided a copy of the doctor's professional license from the same web-site relied on by Plaintiff which further refutes Plaintiff's unsubstantiated allegation. [Doc. 56, Exhibit A]. Likewise, Plaintiff's attempt to attack Dr. Marella-Luce's veracity by contending that she forged a signature of a non-existent Notary Public fails for lack of proof. [Doc. 55 at 2, Exhibit 4]. And, if the unauthenticated exhibit provided by Plaintiff is considered, Defendant again provided documentation from the web-site relied on by Plaintiff to refute Plaintiff's assertion. [Doc. 56, Exhibit B]. The court will not further address these spurious arguments.

5

final say. She had the final say and [he] was black and should not question her and [he] should come back in three months."[3] [Plaintiff's Deposition ("Dep.") at 58-59].

Dr. Parrin T. Barton examined Plaintiff on June 21, 2012, performed an EKG, and made a tentative diagnosis that Plaintiff's irregular heart rhythm was the result of right bundle branch block ("RBBB").[4] He referred Plaintiff to a cardiologist. [Defendant's SMF ¶ 7]. Dr. Barton additionally noted that Plaintiff needed a HgbA1c test.[5] [Defendant's SMF ¶ 9].

Plaintiff followed-up with Dr. Marella-Luce on June 22, 2012, and based on Dr. Barton's evaluation, she certified Plaintiff to drive for an additional three months, again requiring ongoing evaluation to monitor his cardiac issues and requiring Plaintiff to follow-up with Dr. Barton in July 2012. [Defendant's SMF ¶ 10]. Also, at this visit, Dr. Marella-Luce noted that Plaintiff's random blood glucose level was

---

[3]Dr. Marella-Luce denies making any statement regarding Plaintiff's race. [Defendant's SMF ¶ 6].

[4]A RBBB is a defect in the heart's electrical conduction system in which the right ventricle is not directly activated by impulses traveling through the right bundle branch, resulting in potential fainting (syncope), feeling as if you are going to faint (presyncope), and a slow heart rate (bradycardia). [Defendant's SMF ¶ 8].

[5]A HgbA1c test would give Plaintiff's health care providers a better indication of his overall glucose levels rather than relying on random blood glucose levels. [Defendant's SMF ¶ 13].

6

350mg/dL, when just one day earlier - at the appointment with Dr. Barton, it had been 186mg/dL. [Defendant's SMF ¶ 1]. She also concurred with Dr. Barton's requirement that Plaintiff have his HgbA1c tested prior to September 22, 2012. [Defendant's SMF ¶ 12]. And Dr. Marella-Luce required Plaintiff to follow up with a cardiac evaluation due to his possible diagnosis of RBBB. [Defendant's SMF ¶ 14].

Plaintiff had an appointment scheduled with Atlanta Heart Associates on July 26, 2012; however, the appointment was rescheduled to October 25, 2012, at Plaintiff's request. [Defendant's SMF ¶ 15; Doc. 50, Exhibit I]. Plaintiff did not see a cardiologist until March 22, 2013. [Defendant's SMF ¶ 16]. Plaintiff did see Dr. Barton again on June 25, 2012, and at that visit, Plaintiff declined to have the required HgbA1c test conducted. [Defendant's SMF ¶ 17].

Plaintiff's final examination by Dr. Marella-Luce was on September 7, 2012, at which time she noted that Plaintiff's blood glucose readings continued to be elevated, that Plaintiff had declined to have the HgbA1c test, and that he had not seen a cardiologist. [Defendant's SMF ¶ 18]. And, during this visit, Dr. Marella-Luce was informed by a technical assistant that Plaintiff was observed talking to and answering himself while in the waiting room as if he was talking on the telephone. Dr. Marella-Luce observed this behavior herself while Plaintiff was in the waiting room.

7

[Defendant's SMF ¶ 19]. When Dr. Marella-Luce asked Plaintiff about this behavior, he explained that he had a chip implanted in his shoulder by the CIA, which he used for confidential military communications with the CIA.[6] [Defendant's SMF ¶ 20]. Based on Plaintiff's statements about the chip, his cardiac issue, his elevated blood glucose levels and his refusal to have the cardiac and blood sugar problems fully evaluated, Dr. Marella-Luce determined that Plaintiff was not qualified under 48 C.F.R. § 391.41 to drive a commercial vehicle. [Defendant's SMF ¶ 21].

According to Plaintiff, during this visit, Dr. Marella-Luce again stated, "Well, I am a white woman and I have the final say. Michael, you're black." [Plaintiff's Dep. at 107-08]. After advising Plaintiff that he needed a psychological evaluation before he could be re-certified, Dr. Marella-Luce and Plaintiff went to see Jason Martin, Defendant Werner's safety officer, where Plaintiff again explained about the chip implanted in his shoulder. [Defendant's SMF ¶ 22]. Dr. Marella-Luce "left the door open" for Plaintiff by advising him that he could return if he provided evidence

---

[6]Defendant confirmed making these statements during his deposition. [Defendant's SMF ¶¶ 20, 24-27]. Plaintiff also testified that he is personal friends with former President George W. Bush and has been used for all of the military operations by President Bush since the September 11, 2001, attack. [Defendant's SMF ¶ 28]. He stated that he planned the invasions of Iraq and of Afghanistan. [Defendant's SMF ¶ 29].

AO 72A
(Rev.8/82)

of a sufficient psychological evaluation and evidence that he had addressed his medical problems. However, no additional information or documentation was ever provided to Dr. Marella-Luce. [Defendant's SMF ¶ 23].

Plaintiff testified that he presented to Grady Hospital for a psychological examination after his last appointment with Dr. Marella-Luce and that he was found not to be suffering from an active diagnosis of mental illness. [Defendant's SMF ¶ 30]. Plaintiff obtained a letter from Grady Health System regarding his mental health evaluation; however, Plaintiff failed to advise the examiner at Grady that former President Bush is a personal friend of his, that he planned the invasion into Iraq or that he has a chip implanted in his shoulder in order to communicate with the CIA. [Defendant's SMF ¶ 31]. The letter was never presented to Dr. Marella-Luce. Even if she had received the letter from Grady, based on the lack of detail and substance in the letter and the fact that Plaintiff failed to disclose his statements about the chip in his shoulder and the CIA to the examiner, Dr. Marella-Luce would still have disqualified Plaintiff from driving. [Defendant's SMF ¶¶ 33-34].

Since Plaintiff filed the lawsuit against Defendant, Dr. Marella-Luce has seen a "Certification of Health Care Provider Medical Release Form" dated "9/25/12," but the letter was not previously provided to her. [Defendant's SMF ¶¶ 35, 37]. The letter

AO 72A
(Rev.8/82)

purports to show that Plaintiff was medically qualified to drive. [Defendant's SMF ¶ 36]. However, if Plaintiff had provided the letter to Dr. Marella-Luce in September 2012, this document also would not have been sufficient to qualify Plaintiff to drive because the document does not show that Plaintiff had the RBBB evaluated by a cardiologist or that he had his blood sugar level evaluated through a HgbA1c test as required by Dr. Barton. [Defendant's SMF ¶ 38].

Additional facts will be set forth as necessary during discussion of the motion for summary judgment.

## II.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (amended 2010). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to

grant a directed verdict where there can be but one reasonable conclusion.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986).

The movant bears the initial burden of asserting the basis of his motion, and that burden is a light one.  <u>See</u> <u>Celotex</u>, 106 S. Ct. at 2553.  The movant is not required to negate his opponent's claim.  <u>See</u> <u>id.</u>  Rather, the movant may discharge this burden merely by "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  <u>Id.</u> at 2554.

When evaluating a motion for summary judgment, the court must view the evidence and factual inferences in the light most favorable to the nonmoving party. <u>See</u> <u>Frederick v. Sprint/United Mgmt. Co.</u>, 246 F.3d 1305, 1309 (11th Cir. 2001). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986).  Instead, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor."  <u>Fickling v. United States</u>, 507 F.3d 1302, 1304 (11th Cir. 2007) (citing <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990)).

The court will apply these standards in ruling on the motion for summary judgment.

AO 72A
(Rev.8/82)

## III.    Discussion

Plaintiff contends that he was subjected to racial discrimination by Defendant when his employment was terminated in September 2012. [Doc. 1]. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). In a disparate treatment action, the plaintiff carries the burden of demonstrating that the defendant has unlawfully discriminated against him. See Texas Dep't of Community Affairs v. Burdine, 101 S. Ct. 1089, 1093-95 (1981). "A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof." Rioux v. City of Atlanta, Georgia, 520 F.3d 1269, 1274 (11th Cir. 2008). Direct evidence is defined as "'evidence, which if believed, proves [the] existence of [the] fact in issue without inference or presumption. Evidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence.'" Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999) (quoting Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997)). Eleventh Circuit precedent establishes that "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor

12

constitute direct evidence of discrimination." Akouri v. State of Florida Dep't of Transp., 408 F.3d 1338, 1347 (11th Cir. 2005) (citations and internal quotation marks omitted).

Plaintiff asserts that there is direct evidence of racial discrimination based on his allegations that Dr. Marella-Luce, when examining Plaintiff in March 2012, requiring additional medical examinations, and in September 2012, denying him the necessary medical certification, stated that "she's white" and that "she had the final say and Michael you are black." [Doc. 55 at 2]. The court disagrees. Plaintiff does not contend that Dr. Marella-Luce stated that she failed to medically certify Plaintiff as a driver because he was black or made any decisions about Plaintiff's medical condition or driver's certification, causing his termination, because of his race. See, e.g., Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) ("One example of direct evidence would be a management memorandum saying, 'Fire Earley–he is too old.'"). At best, the statements reflect that, when Plaintiff apparently argued or disagreed with Dr. Marella-Luce about her medical decisions, she announced that her decision controls. [Plaintiff's Dep. at 58-59, 107-08]. The fact that the context of these statements is not clear supports the conclusion that the statements do not constitute direct evidence of discriminatory termination. The court

13

also notes that the first time Dr. Marella-Luce allegedly made these statements, in March 2012, she nonetheless granted Plaintiff a three-month certification to allow him time to address her concerns and then in June granted him another three-month extension. [Defendant's SMF ¶¶ 3-5, 10-14]. These statements only suggest a discriminatory intent.

Because the court finds that Plaintiff has not produced direct evidence of discrimination and that Plaintiff, accordingly, relies on circumstantial evidence, the court will use the framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817, 1824-25 (1973), to evaluate his claim. Under this framework, the allocation of burdens and order of presentation and proof are as follows: (1) the plaintiff has the burden of proving a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden (of production) shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action taken against the employee; and (3) should the defendant carry this burden, the plaintiff must have an opportunity to prove that the legitimate reason offered by the defendant was a pretext for discrimination. <u>See</u> <u>id.</u>

Plaintiff may establish a *prima facie* case of racial discrimination by showing that: (1) he is a member of a protected class; (2) he was subjected to an adverse

14

employment action; (3) his employer treated similarly situated employees outside his protected class more favorably; and (4) he was qualified to do the job. See Burke-Fowler v. Orange County, Florida, 447 F.3d 1319, 1323 (11th Cir. 2006). The court finds that Plaintiff can satisfy the first element because his race is African-American and the second element because he was terminated from his employment. Plaintiff, however, failed to produce any evidence whatsoever that any non-African-American individuals, who were similarly situated, that is, with the same medical issues and concerns regarding mental health, were treated more favorably. He has not satisfied the third element.

Defendant also contends that Plaintiff cannot satisfy the fourth element because, due to his physical and mental health issues, Plaintiff was not certified as a commercial driver and not qualified to work for Defendant. [Doc. 50 at 18-21]. In the Eleventh Circuit, courts do not usually address a plaintiff's qualification to do a job when considering whether a termination was discriminatory; instead, a plaintiff's qualifications are considered in light of the employer's non-discriminatory reasons for the termination at the pretext stage. See Crapp v. City of Miami Beach, 242 F.3d 1017, 1020 (11th Cir. 2001). The court, however, notes in light of Plaintiff Ogidi-Gbegbaje's short period of employment, see Id. at 1020 (presumption that a plaintiff

is qualified for the job applies in cases "where a plaintiff has held a position for a significant period of time") (citation and internal quotation marks omitted), and his probationary-like status, see Huddleston v. Sunshine Mills, Inc., 965 F. Supp. 2d 1298, 1314 (N.D. Ala. 2013) (considering a plaintiff's probationary status in determining whether he was qualified for the job to establish a *prima facie* case); but see Williams v. Alabama Dep't of Transportation, 509 F. Supp. 2d 1046, 1053 (M.D. Ala. 2007) (declining to consider probationary employee's qualifications during *prima facie* case), that Plaintiff may not be able to establish the fourth element of the *prima facie* case under the circumstances of this case. Nevertheless, the court finds that it is not necessary to resolve this issue because the court would still find as discussed herein that Plaintiff has established a *prima facie* case of discriminatory termination.

The court finds that summary judgment is not warranted for failure to establish a *prima facie* case because Plaintiff is able to offer other evidence of discriminatory intent. The Supreme Court has explained, "The *prima facie* case method established in McDonnell Douglas was never intended to be rigid, mechanized, or ritualistic." United States Postal Serv. Bd. of Governors v. Aikens, 103 S. Ct. 1478, 1482 (1983) (quoting Furno Construction Corp. v. Waters, 98 S. Ct. 2943, 2949 (1978)) (internal quotation marks omitted). And the Eleventh Circuit has held that "no matter its form,

16

so long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011); accord Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) ("If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.") (emphasis omitted).  The statements allegedly made by Dr. Marella-Luce establish the necessary inference of racial discrimination. In March 2012, Plaintiff claims Dr. Marella-Luce stated that "she's white" and that "she told [him] that, oh, she had the final say.  She had the final say and [he] was black and should not question her and [he] should come back in three months."  [Plaintiff's Dep. at 58-59].  And in September 2012, Plaintiff claims the doctor stated, "Well, I am a white woman and I have the final say.  Michael, you're black."  [Plaintiff's Dep. at 107-08].  While these comments do not constitute direct evidence of racially discriminatory termination, the comments do establish an inference of discrimination sufficient to support a *prima facie* case.

Because Plaintiff is able to establish a *prima facie* case of racial discrimination, the burden of production shifts to Defendant to articulate some legitimate, nondiscriminatory reason for the action taken against Plaintiff.  See Combs v.

17

Plantation Patterns, 106 F. 3d 1519, 1528 (11th Cir. 1997) (citing Burdine, 101 S. Ct. at 1094; McDonnell Douglas, 93 S. Ct. at 1824). "'[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus.'" Id. (quoting Burdine, 101 S. Ct. at 1096) (emphasis in original). A "'defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" Id. (quoting Burdine, 101 S. Ct. at 1094).

As discussed *supra*, Defendant asserts that Plaintiff's employment was terminated because he failed to medically qualify as a commercial driver. [Doc. 50 at 21-22]. Dr. Marella-Luce initially examined Plaintiff in March 2012. [Defendant's SMF ¶ 3]. During this examination, Dr. Marella-Luce noted a possible cardiac rhythm irregularity. [Defendant's SMF ¶ 4]. She certified Plaintiff to drive for a period of three months but required ongoing evaluation due to possible cardiac irregularities and required Plaintiff to follow-up with a primary care physician prior to June 30, 2012, in order to have his cardiac rhythm irregularity more fully evaluated. [Defendant's SMF ¶ 5]. When Plaintiff was examined by Dr. Barton in June 2012, he performed

18

an EKG and made a tentative diagnosis that Plaintiff's irregular heart rhythm was the result of RBBB. He referred Plaintiff to a cardiologist. [Defendant's SMF ¶ 7]. Dr. Barton additionally noted that Plaintiff needed a HgbA1c test. [Defendant's SMF ¶ 9]. Plaintiff saw Dr. Marella-Luce the next day, and, based on Dr. Barton's evaluation, she certified Plaintiff to drive for an additional three months, again requiring ongoing evaluation to monitor his cardiac issues and requiring Plaintiff to follow-up with Dr. Barton in July 2012. [Defendant's SMF ¶ 10]. Also, at this visit, Dr. Marella-Luce noted that Plaintiff's random blood glucose level was 350mg/dL, when just one day earlier it had been 186mg/dL. [Defendant's SMF ¶ 1]. She also concurred with Dr. Barton's requirement that Plaintiff have his HgbA1c tested prior to September 22, 2012, and required Plaintiff to follow up with a cardiac evaluation due to his possible diagnosis of a RBBB. [Defendant's SMF ¶¶ 12, 14].

Plaintiff did not see the cardiologist and declined to have the required HgbA1c test conducted. [Defendant's SMF ¶¶ 15-17; Doc. 50, Exhibit I]. When Plaintiff finally saw Dr. Marella-Luce on September 7, 2012, she noted Plaintiff's failure to comply with her and Dr. Barton's directives, as well as, Plaintiff's behavior observed during the visit. [Defendant's SMF ¶ 18]. That behavior included Plaintiff talking to and answering himself while in the waiting room as if he was talking on the telephone.

AO 72A
(Rev.8/82)

[Defendant's SMF ¶ 19].  When Dr. Marella-Luce asked Plaintiff about this behavior, he explained that he had a chip implanted in his shoulder by the CIA, which he used for confidential military communications with the CIA.[7]  [Defendant's SMF ¶ 20]. Based on Plaintiff's statements about the chip, his cardiac issue, his elevated blood glucose levels and his refusal to have the cardiac and blood sugar problems fully evaluated, Dr. Marella-Luce determined that Plaintiff was not qualified under 48 C.F.R. § 391.41 to drive a commercial vehicle.  [Defendant's SMF ¶ 21].  Before Dr. Marella-Luce would consider certifying Plaintiff as commercial driver, he had to address his cardiac, glucose and mental health issues.  [Defendant's SMF ¶ 23].  The court finds that Defendant has carried its "'exceedingly light'" burden at the rebuttal stage.  Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1556 (11th Cir. 1995) (quoting Perryman v. Johnson Products Co., Inc., 698 F.2d 1138, 1142 (11th Cir. 1983)).

Once a defendant meets its burden of production, "the presumption of discrimination created by the McDonnell Douglas framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'"  Combs, 106 F.3d at 1528 (quoting Burdine, 101 S. Ct. at 1094-95 & n.10).  The plaintiff then "has the

---

[7]Plaintiff confirmed these statements to Jason Martin, Defendant Werner's safety officer.  [Defendant's SMF ¶ 22].

opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." Holifield, 115 F.3d at 1565 (citing McDonnell Douglas, 93 S. Ct. at 1825). "[A] plaintiff may not in all cases merely rest on the laurels of [his] *prima facie* case in the face of powerful justification evidence offered by the defendant." Grigsby v. Reynolds Metals Co., 821 F.2d 590, 596 (11th Cir. 1987). Plaintiff's demonstration of pretext merges with his "ultimate burden of showing that the defendant intentionally discriminated against the plaintiff." Holifield, 115 F.3d at 1565 (citing St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2749 (1993)). This task is a highly focused one.

The court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct[.]'" Combs, 106 F.3d at 1538 (quoting Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir. 1994)). Plaintiff "'may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Jackson v. State of Alabama State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting

21

Burdine, 101 S. Ct. at 1095).  In order to establish pretext through the indirect method, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  McCann v. Tillman, 526 F.3d 1370, 1375-76 (11th Cir. 2008) (citations and internal quotation marks omitted).

Plaintiff does not make any arguments in his response brief that would support a finding of pretext or that would refute each legitimate non-discriminatory reason provided by Defendant for his termination.  The court has already addressed Plaintiff's unsubstantiated contentions that Dr. Marella-Luce is a liar and falsified her affidavit. And the court has considered and rejects Plaintiff's unsubstantiated contention that Dr. Marella-Luce received the medical records concerning Plaintiff's mental health and fitness to operate a commercial vehicle prior to the filing of this lawsuit.  Additionally, the court finds persuasive Dr. Marella-Luce's determination that, even if she had received the Grady Health System evaluation form and the form certifying Plaintiff's fitness to drive, this information would not have changed her denial of Plaintiff's certificate.

AO 72A
(Rev.8/82)

Plaintiff obtained a letter from Grady Health System regarding his mental health evaluation; however, Plaintiff failed to advise the examiner at Grady that former President Bush is a personal friend of his, that he planned the invasion into Iraq or that he has a chip implanted in his shoulder in order to communicate with the CIA. [Defendant's SMF ¶¶ 30-31]. Based on the lack of detail and substance in the letter and the fact that Plaintiff failed to disclose his statements about the chip in his shoulder and the CIA to the examiner, Dr. Marella-Luce justifiably stated that she would still have disqualified Plaintiff from driving. [Defendant's SMF ¶¶ 33-34].

Plaintiff also produced a "Certification of Health Care Provider Medical Release Form" dated "9/25/12." [Defendant's SMF ¶¶ 35, 37]. The letter purports to show that Plaintiff was medically qualified to drive. [Defendant's SMF ¶ 36]. However, if Plaintiff had provided the letter to Dr. Marella-Luce in September 2012, she stated that this document also would not have been sufficient to qualify Plaintiff to drive because the document does not show that Plaintiff had the RBBB evaluated by a cardiologist or that he had his blood sugar level evaluated through a HgbA1c test as required by Dr. Barton. [Defendant's SMF ¶ 38]. This is also a reasonable determination.

AO 72A
(Rev.8/82)

Based on the record before this court, Plaintiff has not "demonstrate[d] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant Werner's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>McCann</u>, 526 F.3d at 1375-76 (citations and internal quotation marks omitted). Plaintiff has not established that Defendant's reasons for his termination were a pretext for discrimination.

## IV. Conclusion

Based on the foregoing reasons and cited authority, the undersigned **RECOMMENDS** that the motion [Doc. 50] for summary judgment filed by Defendant Werner be **GRANTED** on all claims asserted by Plaintiff Ogidi-Gbegbaje.

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 14-01 (N.D. Ga. August 15, 2014). The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED** this 3rd day of October, 2014.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)