IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL OGIDI-GBEGBAJE,

         Plaintiff,

v.

WERNER ENTERPRISE,

         Defendant.

1:13-cv-2033-WSD

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Janet F. King's Final Report and Recommendation [57] ("R&R"). The Magistrate Judge recommends granting Defendant Werner Enterprise's ("Defendant") Motion for Summary Judgment [50] ("Motion").

**I.    BACKGROUND**

On June 18, 2013, Plaintiff Michael Ogidi-Gbegbaje ("Plaintiff"), proceeding *pro se*, filed his Complaint [1] ("Complaint"). Plaintiff asserts a claim of racial discrimination pursuant to Title VII of the Civil Rights Act of 1964. Plaintiff claims that Dr. June Marella-Luce ("Marella-Luce") provides, for Defendant, medical examinations to determine driver fitness pursuant to the Federal Motor Carrier Safety Act ("FMCSA"). Plaintiff claims that Marella-Luce

denied Plaintiff a FMCSA medical certification and, when doing so, Plaintiff alleges that she stated that "she's white" and that "she had the final say and Michael you are black." (See Complaint at 3; Response in Opposition [55] ("Response") to Motion at 2; Motion at Exhibit B ¶ 3). Because Plaintiff could not be FMCSA certified, his employment was terminated.

On July 7, 2014, Defendant filed its Motion and its Statement of Material Facts [50-2] in support of its Motion ("SOMF"). On August 15, 2014, Plaintiff filed his Response to the Motion but did not file a response to Defendant's SOMF, as required by Rule 56.1B(2) of the Court's Local Rules.[1]

Defendant, in the Motion and SOMF, provided facts regarding Plaintiff's examination and the denial of his medical certification. Defendant asserts that the FMCSA requires Plaintiff to pass a medical examination to be certified as a commercial truck driver. (SOMF ¶ 2). On March 30, 2012, Marella-Luce performed a medical examination of Plaintiff to determine if he was medically qualified under the FMCSA requirements to be certified as a commercial truck driver. (Id. ¶ 3). During the March 30, 2012, examination, Marella-Luce noted a possible cardiac rhythm irregularity. (Id. ¶ 4). In light of her findings,

---

[1] Plaintiff's Response is five pages long in a very large font, and consists largely of conclusory responses to Defendant's Motion and the facts presented in it. As required, the Court, because Plaintiff is *pro se*, will liberally construe Plaintiff's Response. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Marella-Luce certified Plaintiff to drive for a period of three (3) months, requiring ongoing evaluation to monitor possible cardiac irregularities, and she required Plaintiff, prior to June 30, 2012, to have a primary care physician more fully evaluate his cardiac rhythm irregularity.  (Id. ¶ 5).  Plaintiff claims it was at the March 30, 2012, examination that Marella-Luce stated that "she's white" and that "she told [him] that, oh, she had the final say.  She had the final say and [he] was black and should not question her and [he] should come back in three months." (Plaintiff's Deposition [50-4] ("Dep") at 58-59).  Defendant denies that Marella-Luce made any statement regarding Plaintiff's race.  (SOMF ¶ 6).

On June 21, 2013, Dr. Parrin T. Barton ("Barton") examined Plaintiff, including by performing an EKG.  Based on the exam and EKG testing, Barton made a tentative diagnosis that Plaintiff's irregular heart rhythm was the result of right bundle branch block ("RBBB").[2]  (Id. ¶ 7).  He determined also that Plaintiff needed a HgbA1c test.[3]  (Id. ¶ 9).

---

[2]     A RBBB is a defect in the heart's electrical conduction system in which the right ventricle is not directly activated by impulses traveling through the right bundle branch, resulting in potential fainting (syncope), feeling as if you are going to faint (presyncope), and a slow heart rate (bradycardia).  (SOMF ¶ 8).

[3]     A HgbA1c test would give Plaintiff's health care providers a better indication of his overall glucose levels rather than relying on random blood glucose levels.  (SOMF ¶ 13).

On June 22, 2012, Marella-Luce examined Plaintiff again and, based on Barton's evaluation, certified Plaintiff to drive for an additional three (3) months. (Id. ¶ 10). She also required him to have periodic medical evaluations to monitor his cardiac issues, and also required him to have, in July 2012, a follow-up evaluation by Barton. (Id.). Marella-Luce noted that during Plaintiff's June 22, 2012, exam, Plaintiff's random blood glucose level was 350mg/dL, and that the day before his level was 186mg/dL. (Id. ¶ 11). In light of these test findings, she required Plaintiff to have his HgbA1c tested prior to September 22, 2012, and, because of a possible diagnosis of RBBB, she required him to have a cardiac evaluation. (Id. ¶¶ 12, 14).

On June 25, 2012, Plaintiff saw Barton again, but Plaintiff declined to have his HgbA1c tested. (Id. ¶ 17).

On September 7, 2012, Plaintiff had a further examination by Marella-Luce. (Id. ¶ 18). Plaintiff had not, as Marella-Luce required, obtained a HgbA1c test and he had not seen a cardiologist. (Id. ¶ 18). During the September 7, 2012, examination, Marella-Luce also observed Plaintiff, while in the waiting room, speaking to himself as if he was talking on a telephone. (Id. ¶ 19). When Marella-Luce asked Plaintiff about this behavior, he explained that the CIA had implanted a chip in his shoulder, which he used for confidential military

communications with the CIA.  (Id. ¶ 20).[4]  Based on Plaintiff's statements about the CIA chip in his shoulder, his cardiac issue, his elevated blood glucose levels, and his refusal to have his cardiac and blood sugar problems evaluated, Marella-Luce determined that Plaintiff was not qualified under 48 C.F.R. § 391.41 to be certified to drive a commercial vehicle.  (Id. ¶ 21).  Marella-Luce advised Plaintiff that he could return for further evaluation if he provided evidence of a sufficient psychological evaluation and evidence that he had addressed his medical problems.  (Id. ¶ 22).  Plaintiff asserts that, at the September 7, 2012, examination, Marella-Luce stated "[w]ell, I am a white woman and I have the final say.  Michael, you're black."  (Dep. at 108).  Plaintiff's failure to be certified ultimately led to his termination by Defendant.

On October 3, 2014, the Magistrate Judge recommended that the Court grant Defendant's motion for summary judgment on the claims in the Complaint.  (R&R at 24).  The Magistrate Judge concluded that, while the alleged comments made by Marella-Luce establish an inference of discrimination sufficient to support a prima facie case, Defendant (i) had articulated a legitimate, nondiscriminatory reason for the action taken against Plaintiff, (ii) Plaintiff did not provide any evidence to

---

[4]   Plaintiff, in his deposition, confirmed his belief that he has a chip in his shoulder that allows him to speak with the CIA.  (Dep. at 113-15).  Plaintiff also testified that he is personal friend of President George W. Bush, and that Plaintiff planned the invasions of Iraq and Afghanistan.  (Id. at 124-27).

suggest that Defendant's stated reasons were pretextual, and (iii) Plaintiff did not otherwise refute Defendant's stated legitimate, nondiscriminatory reason provided to Plaintiff for his termination.  (Id. at 17-22).

On October 17, 2014, Plaintiff filed his Objections [59] ("Objections") to the R&R.  In the Objections, Plaintiff asserts that, because the Magistrate Judge concluded that he established a prima facie case of discrimination, he is entitled to proceed to trial.

## II. DISCUSSION

### A. Standard of Review

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  With respect to those findings and recommendations to which a party has not asserted objections, the district judge must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

B.    Analysis

Plaintiff did not object to the Magistrate Judge's findings of fact, and did not object to Defendant's SOMF as required by Rule 56.1B(2)a of the Court's Local Rules.  The Court, thus, accepts as true the facts asserted in Defendant's SOMF and which were relied upon by the Magistrate Judge in his R&R.  See Slay 714 F.2d at 1095; LR 56.1B(2)a(2), NDGa.[5]

The Magistrate Judge concluded that Plaintiff failed to establish direct evidence of racial discrimination.  The Magistrate Judge found that Plaintiff does not contend that Marella-Luce stated that she failed to medically certify Plaintiff as a driver because he was black and he does not allege that Marella-Luce made any decisions about Plaintiff's medical condition and did not deny his commercial driver's certification because of his race.  (R&R at 13).  The Magistrate Judge found that, at most, the statements Plaintiff alleges that Marella-Luce made reflect that, when Plaintiff apparently argued or disagreed with Marella-Luce's diagnosis, she stated that her decision controlled.  (Id.).  The Magistrate Judge concluded that

---

[5]    Rule 56.1B(2) provides that the "Court will deem each of the movant's facts as admitted unless the respondent: (I) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).  LR 56.1B(2)a(2), NDGa.

the "fact that the context of these statements is not clear supports the conclusion that the statements do not constitute direct evidence of discriminatory termination." (Id.). Plaintiff did not object to the Magistrate Judge's findings regarding Marella-Luce's alleged statements or her conclusion that Plaintiff failed to provide direct evidence of racial discrimination. The Court finds no plain error in this finding or conclusion. See Slay 714 F.2d at 1095.

The Magistrate Judge concluded that Plaintiff established a prima facie case of discrimination. (R&R at 17).

> To establish a prima facie case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job.

E.g., Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006) (internal citations omitted). For the purpose of the Court's review of the R&R, and because neither party objected to the Magistrate Judge's conclusion that Plaintiff met his burden to show a prima facie case, the Court assumes that Plaintiff established a prima facie case of discrimination.

8

"Racial discrimination claims based on circumstantial evidence are evaluated under the *McDonnell Douglas* burden shifting framework." E.g., id.[6] If a plaintiff establishes a prima facie case of discrimination, the defendant must "show a legitimate, non-discriminatory reason for its employment action." E.g., id. The Magistrate Judge found that Defendant met its burden by providing evidence that it terminated Plaintiff because he failed to medically qualify as a commercial driver. (R&R at 18). The Magistrate Judge detailed Marella-Luce and Barton's medical tests and conclusions, Marella-Luce's requirements that Plaintiff obtain additional evaluations due to his cardiac irregularities and blood glucose levels, Plaintiff's refusal to obtain the additional required treatment and tests, and Plaintiff's statements and belief that he had a chip implanted in his shoulder that he used to communicate with the CIA. The Magistrate Judge concluded that Defendant had carried its "exceedingly light" burden of establishing a nondiscriminatory reason for terminating Plaintiff. (R&R at 18-20). The Court finds no plain error in these findings or conclusions. See Slay 714 F.2d at 1095; Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1556 (11th Cir. 1995) ("Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to produce some legitimate, nondiscriminatory reason for the adverse

---

[6]   McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

9

employment decision.  Because the defendant need only produce, not prove, a nondiscriminatory reason, this burden is "exceedingly light.") (internal citations and quotations omitted).

If a defendant is able to "show a legitimate, non-discriminatory reason for its employment action," the plaintiff "must prove that the reason provided by the defendant is a pretext for unlawful discrimination." Burke-Fowler, 447 F.3d at 1323 (internal citations omitted).  Plaintiff must show "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1528 (11th Cir. 1997).  An employer's reason is not a pretext for unlawful discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal citations and quotations omitted).

The Magistrate Judge found that Plaintiff did not argue, or provide any evidence, to discredit Defendant's stated legitimate, nondiscriminatory reason for terminating his employment.  (R&R at 22).  Plaintiff also did not object to the

Magistrate Judge's determination that Plaintiff could not establish that Defendant's stated reasons for terminating him were pretextual.

The record establishes that Plaintiff was not medically qualified to drive commercially for Defendant, and that Defendant terminated him after Marella-Luce gave Plaintiff several opportunities to obtain the medical testing and evaluations needed for her to consider his qualifications to be certified as a commercial driver.  Nothing in the record suggests, even remotely, that Defendant's stated reason for not certifying Plaintiff to drive, and for thus having to terminate him, was pretextual.  The Court, accordingly, finds no plain error[7] in the Magistrate Judge's findings or conclusions, or the Magistrate Judge's recommendation that the Court grant Defendant's motion for summary judgment on the claims in Plaintiff's Complaint.  See Slay 714 F.2d at 1095.[8]

---

[7] Plaintiff objected to the R&R on the ground that, having concluded that Plaintiff established a prima facie case of discrimination, the Magistrate Judge was obligated to let the case go to trial. (Objections at 2).  As noted above, establishing a prima facie case is not the end of the inquiry under the McDonnell Douglas framework.  The Magistrate Judge concluded that Defendant had satisfied its burden to show that it had a legitimate, nondiscriminatory, and nonpretextual reason to terminate Plaintiff, and concluded that Defendant was entitled to summary judgment on Plaintiff's claims.  The Court agrees.

[8] Even if Defendant's evidence was reviewed *de novo*, it shows that Defendant's decision not to certify Plaintiff was legitimate and non-discriminatory.

11

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Janet F. King's Final Report and Recommendation [57] is **ADOPTED**, and Plaintiff's Objections [59] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint [1] is **DISMISSED**.

**SO ORDERED** this 26th day of January, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE